UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYNN MICHELLE ALLEN, *as Fiduciary of the Estate of WILLIAM TYLER ALLEN, deceased*, also known as L. MICHELLE ALLEN,<br><br>       Plaintiff,<br><br>   -v-<br><br>FIDELITY BROKERAGE SERVICES LLC and INTERACTIVE BROKERS LLC,<br><br>       Defendants. | 23-cv-9369 (JSR)<br><br>OPINION AND ORDER |

JED S. RAKOFF, U.S.D.J.:

On September 29, 2023, plaintiff Lynn Michelle Allen, on behalf of the estate of her deceased son William Tyler Allen, filed a verified complaint in New York County Supreme Court against defendants Fidelity Brokerage Services LLC ("Fidelity") and Interactive Brokers LLC ("Interactive"). The complaint brought five claims -- negligence, negligent infliction of emotional distress, breach of fiduciary duties, gross negligence, and wrongful death -- all under state-law causes of action. Allen alleged that defendants' conduct caused her son financial and emotional harm and ultimately led to his tragic death by suicide.

On October 24, 2023, Fidelity removed the case to this Court. As a general rule, "any civil action brought in a State court of

1

which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Like many legal rules, however, this principle is not absolute. "A civil action otherwise removable solely on the basis of" diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Id. § 1441(b)(2). Because Fidelity's removal runs afoul of this exception, the Court hereby remands this action to the New York County Supreme Court.[1]

As all parties agree, Interactive is a citizen of New York.[2] As a result, Fidelity's removal was proper only if the basis for

---

[1] On November 30, 2023, Fidelity and Interactive each filed a separate motion to dismiss Allen's suit under Federal Rule of Civil Procedure 12(b)(6). See ECF Nos. 19, 22. Allen filed an opposition on December 21, 2023, see ECF No. 23, and defendants filed replies on January 4, 2024, see ECF Nos. 24, 25. As the Court requested during the initial pretrial conference, Allen and Fidelity addressed the Court's subject-matter jurisdiction in their papers. (Interactive did not do so.) Although all parties assert that removal was proper under 28 U.S.C. § 1441, the Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006). Moreover, "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." Id.

[2] Fidelity, in its motion to dismiss, suggests that Interactive was never a proper party because Allen's claims against it are all subject to an ongoing arbitration. See ECF No. 19, at 7-8. Even if

federal jurisdiction is not "solely" diversity jurisdiction. Id. In other words, the Court may hear this case only if it possesses federal-question jurisdiction, meaning that Allen's claims "aris[e] under the Constitution, laws, or treaties of the United States." Id. § 1331.

"Most directly, and most often, federal jurisdiction attaches when federal law creates the cause of action asserted." Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning, 578 U.S. 374, 383 (2016). As already stated, each of Allen's asserted causes of action comes from state, not federal, law. "But even when a claim find its origins in state law, there is a special and small category of cases in which arising under jurisdiction still lies." Id.[3] "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal

---

Fidelity is ultimately correct that discovery would show that Allen's claims against Interactive must be resolved in arbitration, the complaint nowhere mentions or incorporates a pending arbitration or an agreement to arbitrate. Moreover, Fidelity fails to explain how the presence of a pending arbitration affects the propriety of Interactive's joinder under the Federal Rules of Civil Procedure or otherwise. Indeed, two defendants "may be joined in one action" if "any right to relief is asserted against them . . . with respect to or arising out of the same . . . occurrence" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Those requirements are satisfied here. The complaint thus provides no basis to conclude that Interactive was improperly joined.

[3] Here and elsewhere, internal alterations, citations, and quotation marks are omitted unless otherwise indicated.

court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 568 U.S. 251, 258 (2013). "Where all four of these requirements are met, . . . jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." Id.

Allen's claims do not fall into this "special and small category of cases," Merrill Lynch, 578 U.S. at 383, for two independent reasons. First, they do not raise substantial questions of federal law. Second, opening the federal courthouse doors to Allen's claims would fly in the face of "Congress's intended division of labor between state and federal courts." Gunn, 568 U.S. at 258.

To be sure, there are lurking federal issues in Allen's claims that are "necessarily raised" and "actually disputed." Id. As the face of Allen's complaint makes clear, each claim rests on one or more alleged duties that defendants owed to their customers that were created by federal law. In particular, the complaint's entire theory of liability is that defendants violated state tort law in various ways by breaching federal regulations promulgated by the Financial Industry Regulatory Authority (FINRA) or the Securities and Exchange Commission (SEC). See ECF No. 1-1 ("Complaint"), at ¶¶ 43-80. Allen cannot succeed on any of her claims without

prevailing on federal issues about the meaning of those regulations and whether defendants' conduct violated them. And those federal issues are all disputed by defendants here.

Those federal issues, however, are "not substantial in the relevant sense." Gunn, 568 U.S. at 260. "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim necessarily raises a disputed federal issue." Id. "The substantiality inquiry . . . looks instead to the importance of the issue to the federal system as a whole." Id. In making that inquiry, the Court is guided by the Second Circuit's decision in NASDAQ OMX Group, Inc. v. UBS Securities, LLC, 770 F.3d 1010 (2014). That case involved a declaratory judgment action brought by NASDAQ "to preclude UBS from pursuing arbitration" of indemnification claims over alleged injuries from NASDAQ's botched handling of Facebook's initial public offering ("IPO"). Id. at 1013. The alleged basis for those underlying injuries was, inter alia, that NASDAQ had acted negligently and breached its "implied duty of good faith and fair dealing" under state law by violating federal regulations. Id. at 1013; see id. at 1021 ("UBS's arbitration demand makes plain that a singular duty underlies all four of its state law claims: NASDAQ's duty to operate a fair and orderly market.").

Although the Second Circuit held in <u>NASDAQ</u> that federal-question jurisdiction indeed existed in the particular circumstances of that case, its analysis strongly counsels against deeming Allen's claims here to raise a substantial question of federal law. The Second Circuit's substantiality holding was premised on the fact that the specific duty at issue -- the "maintenance of fair and orderly markets" -- was "the animating goal of federal securities law" writ large. <u>Id.</u> at 1021. The Second Circuit thus "conclude[d] that the disputed federal issue in th[e] case -- whether NASDAQ violated its Exchange Act obligation to provide a fair and orderly market in conducting an IPO -- is sufficiently significant to the development of a uniform body of federal securities regulation to satisfy the requirement of importance to the federal system as a whole." <u>Id.</u> at 1024. The Second Circuit also emphasized that its holding was grounded not just in the significance of the legal issue in a vacuum, but in the factual context of the case, which involved "one of the largest IPOs in the nation's history" and "reached well beyond UBS to affect every member of the NASDAQ exchange and hundreds of thousands of investors." <u>Id.</u> at 1025 & n.10.

The Second Circuit was clear in <u>NASDAQ</u> that its holding was consistent with the principle that "the importance of stock exchanges and securities markets to the national economy does not necessarily render every federal question pertaining thereto

sufficiently substantial" for federal jurisdiction. Id. at 1025. Of critical relevance here, the Second Circuit specifically disclaimed any suggestion that its exercise of federal jurisdiction in NASDAQ would "lead to a horde of increased litigation" or that it would "sweep into federal court every state law claim that turns on the interpretation of a stock exchange rule, including countless arbitration proceedings before . . . FINRA." Id. at 1029 n.13. Indeed, the Second Circuit explained, "[f]ew, if any, such cases are likely to present issues of such importance to the federal system of securities regulation as the alleged wholesale failure charged [t]here of a stock exchange's Exchange Act duty to provide a fair and orderly market for a major IPO." Id.

The disputed federal regulations in Allen's claims fall within the heartland of issues that, while not insignificant, are nevertheless not sufficiently substantial to confer federal jurisdiction. Allen's claims turn on a handful of FINRA regulations for securities brokers, including Rule 2010 (firms "shall observe high standards of commercial honor"), Rule 2090 (firms "shall use reasonable diligence, in regard to the opening and maintenance of every account, to know (and retain) the essential facts concerning every customer"), Rule 2360 (certain obligations regarding trading of stock options), Rule 3110 (firms "shall establish and maintain a system to supervise the activities of each associated person"),

7

Rule 3120 (firms "shall designate and specifically identify to FINRA one or more principals who shall establish, maintain, and enforce a system of supervisory control policies").[4] See Complaint ¶ 62. The complaint also invokes an SEC regulation requiring that brokers "making a recommendation of any securities transaction or investment strategy . . . act in the best interest of the retail customer at the time the recommendation is made." 17 C.F.R. § 240.15*l*-1 ("Regulation Best Interest"); Complaint ¶ 62.

Such regulations, applied here to unique facts in the context of a single customer, are far afield from "the alleged wholesale failure . . . of a stock exchange's Exchange Act duty to provide a fair and orderly market for a major IPO." NASDAQ, 770 F.3d at 1029 n.13. The Court recognizes that the facts here involve the tragic circumstances of a young man's death. Whether defendants violated duties supplied by federal regulations in a manner that contributed to this tragedy, as the complaint alleges, is deeply significant to Allen. The Court in no way discounts that fact. Yet the Court must remain mindful that the question of substantiality for purposes of federal jurisdiction "looks . . . to the importance of the issue to the federal system as a whole," not "to the particular parties in the immediate suit." Gunn, 568 U.S. at 260.

---

[4] The federal securities laws empower and require FINRA to promulgate regulations that must be approved by the SEC and that carry the status of federal law. See Fiero v. FINRA, 660 F.3d 569, 577-78 (2d Cir. 2011).

In this context, ascertaining whether there has been a violation of discrete, isolated regulations as applied to one particular customer is not substantial "to the federal system as a whole." Id.

To conclude otherwise would sweep in virtually every dispute involving a federal securities regulation, contrary to the clear admonitions of both the Second Circuit and the Supreme Court. See NASDAQ, 770 F.3d at 1022 n.7 ("The incorporation of a federal standard in a state-law private action does not necessarily trigger federal jurisdiction" because of "doubt as to the substantiality of the federal issue in dispute."); Gunn, 568 U.S. at 258 (referring to the "special and small category of cases in which arising under jurisdiction still lies" for state-law causes of action that turn on federal issues); id. at 258-64 (holding that federal jurisdiction was lacking over a case that necessarily turned on a disputed question of patent law because the fact-bound federal issue was not substantial to the federal system as a whole).

Even if the federal issues involved in Allen's claims were sufficiently substantial, however, Allen's claims may not proceed in federal court for the independent reason that exercising jurisdiction here would "disturb the balance of federal and state judicial responsibilities." Gunn, 568 U.S. at 255. The Supreme Court has twice cautioned courts to be wary of exercising federal

9

jurisdiction over state-law tort claims that happen to turn on federal standards, especially where, as here, Congress has not provided any private cause of action for the federal regulations at issue.[5] See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 318-20 (2005); Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 810-12 (1986). In Merrell Dow, the Supreme Court held that there was no federal jurisdiction over a state-law tort claim premised on the violation of the Federal Food, Drug, and Cosmetic Act, in large part because "it would flout congressional intent to provide a private federal remedy for the violation of the federal statute" when there was "no federal private cause of action." 478 U.S. at 812. The Court reasoned that it would "undermine[] congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute solely because the violation of the federal statute" is an element of a claim "under state law, rather than a federal action

---

[5] Court in this District have consistently held that there is no private cause of action for violations of FINRA regulations. See, e.g., Vallely v. Merrill Lynch, Pierce, Fenner & Smith Inc., 464 F. Supp. 3d 634, 645 (2020); Hauptman v. Interactive Brokers, LLC, 349 F. Supp. 3d 292, 295-96 (S.D.N.Y. 2018); cf. Fiero, 660 F.3d at 574-76 (no cause of action for FINRA itself to seek judicial enforcement of its disciplinary fines). And as for the one SEC regulation at issue in Allen's claims, Regulation Best Interest, the SEC's promulgation of that regulation specifically disclaimed that it "creates any new private right of action." 88 Fed. Reg. 33318, 33327 (July 12, 2019).

under federal law." Id. The Supreme Court reiterated that analysis in Grable, explaining that "Merrell Dow thought it improbable that Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating federal law solely because the violation of the federal statute is said to create a rebuttable presumption of negligence . . . under state law." 545 U.S. at 319. Indeed, "[a] general rule of exercising federal jurisdiction over state claims resting on federal . . . violations would . . . have heralded a potentially enormous shift of traditionally state cases into federal cases." Id. at 319. That consequence is exactly what the fourth factor of the Gunn test -- "capable of resolution in federal court without disrupting the federal-state balance approved by Congress" -- is meant to avoid. Gunn, 568 U.S. at 258.

Because the Court lacks federal-question jurisdiction over Allen's claims and defendant Interactive is a citizen of New York, Fidelity's removal of the suit was improper. See 28 U.S.C. § 1441(b)(2). Accordingly, the Court hereby remands this case to the New York County Supreme Court, where it was originally filed. The oral argument scheduled for January 23, 2024 will not take place. The Clerk is respectfully directed to close document number 18 on the docket and to close this case.

SO ORDERED.

Dated:   New York, NY                              _____

11

January 12, 2024                    JED S. RAKOFF, U.S.D.J.

12